**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GAIGE TREADWAY, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:22-cv-2287** |
| **v.** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| CITY OF COLUMBUS, *et al.,* | : | |
| | : | **MAGISTRATE JUDGE JOLSON** |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

This matter is before the Court on Defendants' Motion For Summary Judgment (the "Motion"). (ECF No. 48). For the reasons set forth below, the Motion is **GRANTED IN PART and DENIED IN PART**.

## I.      BACKGROUND

This case highlights certain fundamental rights paramount in the events surrounding the protests arising after the George Floyd murder by a police officer in May 2020. Protests spread across the country, including in Columbus beginning on May 28, 2020, to generate widespread public attention to past and continuing police violence directed overwhelmingly at communities and individuals of color. (ECF Nos. 4 at 13; 6 at 13). Videos of the protests were captured by various sources including from bystanders and Columbus Division of Police ("CPD") body-worn cameras. (ECF Nos. 41, 47).

On May 30, 2020, Plaintiff, Gaige Treadway, and his father joined demonstrators in downtown Columbus and participated in a protest which ultimately led to Plaintiff's arrest for assaulting an officer. (ECF Nos. 4 ¶¶ 13, 19; 6 ¶¶ 13, 19). Plaintiff reports arriving in downtown Columbus at around 10:00 a.m. and joining protestors outside the Ohio Statehouse near the

1

intersection of Broad street and High street. (ECF No. 48 at 5). Plaintiff arrived in a pair of khaki pants, a t-shirt, a camo vest, running shoes and brought a gas mask, military-issued gloves, and a bucket. *(*ECF No. 39-1 at 24–25, 28–29).

Police officers, including Michael Ramsey ("Officer Ramsey"), were on duty during the protest and directed to report to the area on Broad and High. (ECF No. 48 at 5). At the time, Officer Ramsey was working as the patrol sergeant for the CPD. (ECF Nos. 48 at 5; 53 at 2). Defendants maintain that Ramsey was wearing CPD-issued Fox mountain bike gear over top of the CPD bicycle uniform (ECF No. 48 at 5–6) and Plaintiff emphasizes that Ramsey's attire had no badge, insignia, or other symbol indicating that he was a member of law enforcement (ECF No. 53 at 2–3).

During the protest, Plaintiff eventually made his way into the street, at the intersection of Broad and High, where he locked arms with other protestors. (ECF No. 39-1 at 35). Protestors were ordered to leave the street, and Plaintiff recalls hearing orders to disperse. (*Id*. at 41). Plaintiff recalls seeing police throwing cannisters with mace and spraying mace, which prompted him to put on his gas mask. (*Id*. at 35). Plaintiff also reports that officers held up bikes along the street to push individuals off the street. (*Id*. at 37–38). Defendants confirmed that "shortly after 11:00 a.m., Ramsey's unit lined their bikes up against the curb on the southwest side of High Street to keep the crowd on the sidewalk because traffic was still flowing." (ECF No. 48 at 6).

While CPD made their efforts to push individuals out of the street, Plaintiff's father was sprayed in the eyes with mace. (ECF No. 39-1 at 38). Plaintiff stepped aside to help his father "get his eyes flushed out" by using water bottles. (*Id*. at 37-38). They stopped on the sidewalk near the Broad and High street intersection in front of the Ohio Statehouse. (*Id*. at 39). During this time, Defendants argue that the situation was chaotic and escalating. (ECF No. 48 at 11). CPD eventually

deployed canisters containing chemical agents on the sidewalk on the eastside of High Street. Protestors were throwing bottles and objects and kicking cannisters back at police officers from the sidewalk where Plaintiff was standing. (ECF No. 39-1 at 60). Plaintiff notes that he heard orders to disperse, but only to disperse from the street. (*Id*. at 41, 59–60). Plaintiff believed he was allowed to remain on the sidewalk. (*Id*. at 41–42, 54–55, 59–60).

Plaintiff then reports a cannister filled with gas was thrown on the sidewalk near him and his father. (*Id*. at 40). When the canister landed in the area, Plaintiff covered it with a bucket and doused the cannister with water to stop it from spreading. (*Id*. at 40–41). Ramsey reports that he saw an individual, who he later identified as Plaintiff, wearing a gas mask and standing with a can of gas. (ECF No. 44 at 21–23). He claims he saw Plaintiff pick up the canister and throw it into the street. (*Id*.). Plaintiff denies doing this, and video evidence does not reflect this, but Plaintiff admits he tampered with a police-deployed canister by covering it, and that he was in the same area as individuals throwing cannisters into the street. (ECF No. 39-1 at 60–63).

CPD officers eventually approached the area where Plaintiff was standing on the sidewalks and had covered a cannister. (ECF No. 48 at 10). The officers ordered Plaintiff, who was standing on the sidewalk with two other individuals, to disperse (ECF No. 39-1 at 62–63). The officers began using their mace on the group and Officer Ramsey approached. (*Id*.). Video evidence submitted by Defendants reflect that Plaintiff flipped the middle finger at the officers, turned around, and began walking northbound towards the intersection of Broad and High. Ramsey then rapidly approached Plaintiff from behind as Plaintiff continued to walk away. Ramsey grabbed Plaintiff's shoulder and lifted Plaintiff's gas mask. Plaintiff then turned around and swung a bucket at Ramsey and pushed him. (ECF No. 41, Ex. E, at 4:04-4:30).

3

Ramsey attempted to subdue and grab Plaintiff. Other CPD officers joined and subdued Plaintiff, pinning him to the ground and handcuffed him. Plaintiff described his reaction as follows:

> Q. You didn't know or – but when you turned around, you did identify that he was a police officer?
> A. Right. But as soon as I was turned around, my arms were already swinging. It was just instinctual. It wasn't – I stopped, recognized that he was an officer, and then proceeded – it was just a quick reaction.
> Q. So would you have turned around and swung no matter who it was?
> A. Correct.
> Q. But after the first swing, you did identify that you were dealing with a Columbus police officer?
> A. Correct.

(ECF No. 39-1 at 141).

Plaintiff was arrested and transported to a holding facility where he met with James Long ("Officer Long") who completed the appropriate paperwork for arrests that occurred at the downtown protest. (ECF Nos. 4 ¶ 6; 48 at 12). Officer Long was only informed that Plaintiff punched Ramsey and was given no additional information. (ECF No. 48-8 ¶ 8). Long then completed a criminal complaint and probable cause affidavit with this information. (*Id*. ¶ 9). Plaintiff was then charged with "knowingly cause[ing] physical harm to another, to wit Michael Ramsey, a peace officer while in the performance of his official duties by means of punching him." (ECF No. 42-2). The Complaint was filed with the Franklin County Municipal Court on May 30, 2020. Plaintiff was taken to Franklin County Corrections Center II in the early evening of May 30, 2020. (ECF No. 4 ¶ 23). He was released on bond on June 2, 2020. (*Id*. ¶ 24). On June 9, 2020, the charge against Plaintiff was dismissed at the request of the Franklin County Prosecutor's Office. (*Id*. ¶¶ 24–25).

Plaintiff filed a complaint with this Court with claims against Officer Ramsey, Officer Long, "Unknown Officers," and the City of Columbus. Plaintiff brings claims under 42 U.S.C. §

1983 against Ramsey and Long, in their individual and official capacities, alleging First Amendment claims against Ramsey and Long, excessive force and false arrest claims against Ramsey, and a malicious prosecution claim against Long. Plaintiff also brings state-law claims for intentional infliction of emotional distress against Officers Ramsey and Long. (ECF No. 4). Defendants filed a Motion for Summary Judgment on all claims asserted against them. (ECF No. 48).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Evidence that is "merely colorable" or "not significantly probative" will not defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment has the initial burden of presenting the Court with law and argument in support of its motion, as well as "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

5

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Even so, "[t]he mere existence of a scintilla of evidence to support [the nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

## III. LAW AND ANALYSIS

Defendants seek summary judgment on all claims in the Amended Complaint. (ECF No. 48).

### A. Claims Against Defendants City of Columbus, James Long, and Unknown Officers

As for Plaintiff's claims against Defendants City of Columbus, Officer Long, and Unknown Officers, Plaintiff does not oppose Defendants' Motion and "acknowledges that the record in this matter contains insufficient evidence to demonstrate" liability. (ECF No. 53 at 7). Accordingly, with regard to these defendants, the Motion is **GRANTED**.

### B. State Law Claim For Intentional Infliction of Emotional Distress (Count IV)

Plaintiff also concedes that the state law claim for intentional infliction of emotional distress is barred by the statute of limitations and therefore subject to summary judgment. (ECF No. 53 at 19). As such, Defendants' Motion is **GRANTED** for the state law claim for intentional infliction of emotional distress against all Defendants.

### C. Claims Against Defendant Michael Ramsey (Counts I and II)

What remains are Plaintiff's various constitutional violation claims against Defendant Ramsey arising under § 1983: (1) violation of the First Amendment; (2) use of excessive force; and (3) false arrest. (ECF No. 53). To prevail on § 1983 claims, Plaintiffs "'must establish that a

6

person acting under color of state law deprived [Plaintiff] of a right secured by the Constitution or laws of the United States.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001)).

In the Motion, Defendants argue that Ramsey's conduct did not violate Plaintiff's constitutional rights, and that Ramsey is entitled to qualified immunity. Qualified Immunity "shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015). A qualified immunity analysis at the summary judgment stage involves a two-step sequence whereby a court must decide: (1) whether the facts "alleged or shown make out a violation of a constitutional right"; and (2) whether "the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). At this juncture "[t]he Plaintiff bears the burden of showing that a clearly established right was violated and must, at a minimum, offer sufficient evidence to create a genuine issue of fact." *Judd v. City of Baxter, Tennessee*, 780 F. App'x 345, 347 (6th Cir. 2019) (quoting *DiLuzio v. Vill. Of Yorkville*, 796 F.3d 604, 608-09 (6th Cir. 2015)).

An official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Ouza v. City of Dearborn Heights*, Michigan, 969 F.3d 265, 275 (6th Cir. 2020). To determine whether a right is clearly established, "a district court must look to then-existing binding precedent from the Supreme Court, the Sixth Circuit or itself." *Klemencic v. Ohio State Univ.*, 111 F.3d 131 (6th Cir. 1997). It is not the case that for a right to be "clearly established," the specific action at issue must previously have been held unlawful, but "it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*,

483 U.S. 635, 640 (1987). The analysis of whether a right is "clearly established" must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008).

Ultimately, summary judgment should be denied if the undisputed facts, taken in the light most favorable to the plaintiff, show that the defendants violated clearly established rights or reveal a factual dispute "such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988); *see Vakilian v. Shaw*, 335 F.3d 509, 515 (6th Cir. 2003) (stating that summary judgment on qualified immunity grounds is improper "if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right").

The qualified immunity two-step analysis will be applied to each of Plaintiff's remaining claims against Ramsey *seriatim*.

### 1.  Free Speech

Plaintiff brings First Amendment claims, alleging that "having taken offense to Plaintiff's rude gesture, Columbus law enforcement officers, including Michael Ramsey, elected to attack Plaintiff from behind and forcibly remove him from the area of the protest." (ECF No. 4 ¶ 31).[1] Plaintiff asserts that, as a direct and proximate cause of Defendants' alleged conduct, he was deprived of his freedom of speech, freedom of expression, and right to peacefully protest. (*Id*. ¶ 33).

---

[1] Plaintiff also alleges that all Defendants "conspired to further deprive Plaintiff of his rights to peaceful protest and personal liberty by filing a spurious criminal complaint." (ECF No. 4 ¶ 32). Plaintiff admits to the lack of evidence against Defendants City of Columbus, Officer Long, and Unknown Officers. As such, this Court has only addressed the First Amendment claim against Ramsey.

*a.  Whether There Was A Constitutional Violation*

Three elements make up a retaliation claim: the plaintiff engaged in protected conduct; adverse action was taken against the plaintiff; and the adverse action was in part motivated by the plaintiffs protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendants move for Summary Judgment, arguing that Ramsey did not violate Plaintiff's First Amendment rights when removing Plaintiff's gas mask or when arresting Plaintiff because: (1) Plaintiff was not engaged in a constitutionally protected activity at the time; and (2) there is no evidence Ramsey's action was motivated in response to Plaintiff's exercise of his First Amendment rights. (ECF No. 48 at 35).

The first issue to address is whether Plaintiff was engaged in a constitutionally protected activity. Defendants allege Plaintiff was not engaged in constitutionally protected activity as he tampered with a police-deployed canister to render it ineffective, facilitated an ongoing riot, and was noncompliant. (ECF No. 48 at 36-37). Both parties' police procedures experts agree the protest turned into a riot and, under Ohio Revised Code § 2917.05, a law enforcement officer "is justified in using force, other than deadly force, when and to the extent he has probable cause to believe such force is necessary to disperse or apprehend rioters" when the officer is "engaged in suppressing riot or in protecting persons or property during riot." Based on the conclusion that the protest became a riot, Defendants argue that the officers had a "legitimate interest in dispersing the crowd" and to do so without interference from Plaintiff. (*Id*. at 36).

Defendants argue that Plaintiff's actions would not lead a reasonable officer to believe Plaintiff was complying with orders to disperse. (ECF No. 54 at 12). While Plaintiff had the right to flip his middle finger, he did not have the right to interfere with the police deployed cannisters or ignore orders to disperse. (ECF No. 48 at 36-37). Plaintiff admits that the reason he brought a

9

gas mask, military gloves, and a bucket to the protest was to prevent the effects of police deployed gas canisters. (ECF No. 48 at 37). Defendants also indicate that "people were throwing bottles/objects at police at the time the canisters were deployed, and that individuals began throwing/kicking canisters back at police officers." Plaintiff also admits he tampered with a police-deployed canister and that he was in the same area as individuals who were kicking/throwing canisters. (ECF No. 48 at 37). Thus, Defendants argue that, even if Ramsey were mistaken about Plaintiff being one of the protestors throwing canisters at police, Plaintiff's "objective actions would not lead a reasonable officer to believe that he was going to comply with orders to leave the area." (ECF No. 54 at 12). Defendants believe that Plaintiff's "gesture, in combination with his prior failure to disperse and handling of a canister, would lead a reasonable officer to believe that he was not going to disperse particularly when he was still wearing a gas mask that protected him from the effects of the chemical agents used to disperse the crowd." (ECF No. 48 at 37).

To support the argument that Ramsey was entitled to pursue the legitimate interest in dispersing the crowd without interference, Defendants cite *Colten v. Kentucky*, 407 U.S. 104 (1972). (ECF No. 48 at 36). In *Colton*, the Supreme Court affirmed the conclusion that the defendant "was not engaged in activity protected by the First Amendment" when defendant "expressed a willingness" to leave but failed to do so after police officers' orders. *Colten*, 407 U.S. at 109. Following a demonstration, the defendant joined a procession of six to ten cars. *Id*. at 106. A police officer pulled over a driver in the procession after the officer noticed the driver had an expired license plate. *Id*. The defendant and other individuals in the procession followed the driver off the road. *Id*. Additional officers approached the scene and asked the group to disperse the scene as an officer issued a citation to the driver with the expired license plate. *Id*. at 106–07. The defendant responded that he wanted "to make a transportation arrangement" for the driver

receiving the citation because the defendant thought the car would be towed. *Id*. at 107. The defendant was, again, ordered to leave and was arrested for disorderly conduct when he failed to do so. *Id*. The defendant argued he "expressed a willingness to leave but wanted first to make a transportation arrangement." *Id*. The Supreme Court held that the officers had the right to order defendant to leave and the Court noted that "[t]he State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction." *Id*.

Unlike in *Colton*, however, Plaintiff goes beyond being willing to leave by arguing he was complying with orders to disperse. Video evidence supports Plaintiff's consistent assertion that he was complying with police commands and was walking away when Ramsey allegedly violated Plaintiff's First Amendment right by pulling off Plaintiff's gas mask. (ECF No. 53 at 16). The video shows that, after officers approached Plaintiff and a group of other protestors on the sidewalk, Plaintiff walked north towards the corner of Broad and High. (ECF No. 41, Ex. E). Defendants argue that this is a direction of where there were still numerous protestors but, as Plaintiff has described in its response: Plaintiff could not travel east without walking into a solid concrete structure; could not travel south without shoving past the officers; and could not travel west without walking into the street, an area previously ordered to vacate. (ECF No. 53 at 17). Regardless to whether the protest was a "riot" and that there was a "legitimate interest in dispersing the crowd," a reasonable jury can find that this "legitimate interest" is unsubstantiated here as Plaintiff was engaged in protected activity by complying with orders to disperse. (ECF No. 48 at 35).

Sufficient evidence, in the light most favorable to Plaintiff, shows that Plaintiff was not engaging in any unprotected activity. Defendants reference the Columbus City Code of Ordinances 2333.04 which prohibits: (1) recklessly obstructing a highway, street, sidewalk, or other place provided in the ordinance; or (2) "Disobey[ing] a reasonable request or order to move issued by a

person the actor knows to be or is informed is, a peace officer or a person with the authority to control the use of the premises when the request/order is made in order to prevent the obstruction of a highway or any of the areas mentioned in subsection (1)." (ECF No. 48 at 36). Note that "'obstruct' means to render impassable or to render passage unreasonably inconvenient or hazardous." Ord. No. 1777-2018, § 3, 6-25-2018. The video, however, shows that Plaintiff was not rendering the sidewalk impassable or unreasonably inconvenient or hazardous when he was approached by Ramsey from behind. (ECF No. 41, Ex. E).

The next inquiry for this Court to address is whether there is evidence Ramsey's action was motivated in response to Plaintiff's exercise of his First Amendment rights. (ECF No. 48 at 35). For example, in *Skovgard v. Pedro*, 448 F. App'x 538, 547–48 (6th Cir. 2011), defendants' motion for summary judgment was granted when the plaintiffs, who were protesting and arrested for trespassing, failed to prove defendant officers were motivated by the plaintiff's exercise of free speech. The defendant officers encouraged the plaintiffs to continue their protest at a different location and locked up their signs after arresting them. 448 F. App'x at 547–48. The court held the officers were entitled to qualified immunity and found plaintiffs failed to show defendants were motivated by their speech rather than their belief that the plaintiff was trespassing. *Id*. Here, Defendants argue Ramsey is entitled to qualified immunity because his actions were motivated by Ramsey's belief that Plaintiff would not follow orders to disperse. (ECF No. 48 at 38).

As explained, the argument that Ramsey was motivated by his belief that Plaintiff would not follow orders is unconvincing for this Motion for Summary Judgment: the evidence in the light most favorable to the nonmoving party indicates Plaintiff was complying with orders to disperse. (ECF No. 48 at 35). Unlike in *Skovgard*, Plaintiff has adduced sufficient evidence to find Ramsey was motivated by Plaintiff's speech rather than by a legitimate interest in dispersing a protest crowd. Officers tried to remove protestors from the area through deploying chemical agents.

12

Plaintiff responded by raising his middle finger at the officers, then turning and walking away as ordered towards Broad and High street along with the other protestors. After Plaintiff begins to walk away, Ramsey then comes from behind Plaintiff, grabs Plaintiff, and snatches off Plaintiff's mask. (ECF No. 41 at Ex. E). Viewing this in light favorable to the nonmoving party, one is left to conclude that Defendant was motivated by Plaintiff's First Amendment activity.

This Court must now examine whether "the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.

### b. Whether the Right at Issue Was Clearly Established

Defendant believes that, even assuming the Court finds that Ramsey's conduct violated Plaintiff's First Amendment rights, Plaintiff has not identified clearly established law that placed Ramsey on notice that pulling off Plaintiff's gas mask under the circumstances was unlawful. This Court finds that "[a]ny reasonable officer would know that a citizen who raises her middle finger engages in speech protected by the First Amendment." *Cruise-Gulyas v. Minard,* 918 F.3d 494 (6th Cir. 2019). In *Cruise-Gulyas v. Minard*. 918 F.3d 494, 497 (6th Cir.2019), an officer stopped the plaintiff for speeding. *Id.* at 496. As the plaintiff drove away, she raised her middle finger at the officer. *Id.* The officer then pulled the plaintiff "over a second time, less than 100 yards from where the initial stop occurred and amended the ticket to a speeding violation." *Id.* The court concluded that the officer "clearly had no proper basis for seizing Cruise-Gulyas a second time." *Id*, at 498.

As in *Cruise-Gulyas*, Defendants knew that a citizen who raises her middle finger engages in speech protected by the First Amendment. Defendants argue that Ramsey's conduct is distinguishable here because Ramsey had a legitimate reason for his conduct that was unrelated to Plaintiff's speech. (ECF No. 48 at 37). Defendants ultimately argue that Ramsey's action were to expose Plaintiff to chemical agents so he, along with other protesters, would disperse. (*Id.*). It appears, however, that the officers already succeeded in getting Plaintiff to leave.

13

The evidence, taken in the light most favorable to Plaintiff, shows Ramsey violated clearly established rights when removing the gas mask. Accordingly, Defendants Motion for Summary Judgment on the First Amendment claim against Ramsey is **DENIED** with respect to Ramsey's act of taking off Plaintiff's gas mask.

Defendants separately argue for summary judgment on First Amendment claims related to Ramsey's *arrest and removal of Plaintiff from the protest.* Defendants argue that Ramsey's actions following Ramsey's removal of Plaintiff's gas mask did not violate Plaintiff's First Amendment rights because Plaintiff "was not engaged in constitutionally protected activity when he physically assaulted Ramsey and physically resisted arrest." (ECF No. 48 at 38–39). Plaintiff does not specifically address this argument but alleges in the Amended Complaint that while Plaintiff was exercising his First Amendment right, Ramsey took offense to the "rude gesture" and "forcibly remove[d] Plaintiff from the area of the protest." (ECF No. 4 ¶31).

After the gas mask was removed, Plaintiff turned around and was no longer engaging in protected activity and dispersing the area. Instead, as Plaintiff describes it, he "immediately turned around, swung the small plastic bucket in his hand (which appears to have hit Ramsey's elbow guard), and attempted to push his assailant away." (ECF No. 53 at 5). He was then arrested for assault on a police officer. (ECF No. 4 ¶19). Plaintiff explains that "as I was turned around, my arms were already swinging. It was just instinctual. . . . I stopped, recognized that he was an officer, and then proceeded – it was just a quick reaction." (ECF No. 39-1 at 141). This Court finds that swinging a bucket at an individual and proceeding to push away an officer is not constitutionally protected activity.

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** for Defendants with respect to a First Amendment claim that the arrest and removal of Ramsey from the protest violated Plaintiff's First Amendment rights.

14

## 2. Excessive Force

Plaintiff brings excessive force claims under the Fourth and Fourteenth Amendments. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Fourth and Eighth Amendments are the primary constitutional protections against excessive force by government officials. *Id.* When the Fourth and Eighth Amendments are inapplicable, courts have applied the Fourteenth Amendment. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). Nevertheless, when an excessive force claim "is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (quoting *United States v. Lanier,* 520 U.S. 259, 272, n.7 (1997)). An excessive force claim under the Fourteenth Amendment, thus, is inappropriate when the claim is "covered by" the Fourth Amendment. *Lewis*, 523 U.S. at 843.

Defendants move for summary judgment, arguing that qualified immunity applies because the Fourth and Fourteenth Amendments were not violated when Ramsey: (1) removed Plaintiff's gas mask; or (2) subdued Plaintiff to arrest him. (ECF No. 48 at 16). In any event, Defendants argue Ramsey is entitled to qualified immunity because it was not clearly established that the conduct violated the Fourth or Fourteenth amendment. (*Id.* at 20–27).

### a. Whether There Was A Constitutional Violation

### (1) Fourth Amendment: Whether Conduct Constituted A Seizure

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. CONST. AMEND. IV; *Graham*, 490 U.S. at 388. A claim for excessive force in

15

violation of the Fourth Amendment requires a seizure: an intentional acquisition of physical control. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596, (1989). The arrest of a suspect constitutes a seizure. *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 259 (S.D. Ohio 2021). Circumstances falling short of an arrest also might constitute a seizure, where an "officer, by means of physical force or show of authority, terminates or restrains [someone's] freedom by movement through means intentionally applied." *Id*. (quoting *Brendlin v. California*, 551 U.S. 249, 254–55 (2007) (internal citations omitted)). The physical force applied must be with "intent to restrain, as opposed to force applied by accident or for some other purpose." *Kilnapp v. City of Cleveland, Ohio*, No. 22-4059, 2023 WL 4678994, at *4 (6th Cir. July 21, 2023) (quoting *Torres v. Madrid*, 592 U.S. 306, 307 (2021)). Thus, the inquiry for the Court "is whether the challenged conduct objectively manifests an intent to restrain." *Torres*, 592 U.S. at 317. "While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain." *Id*. The arrest "indisputably constitutes a seizure." *See Alsaada*, 536 F. Supp. 3d at 259. The question for this Court is whether the removal of the gas mask was a seizure and thus "covered by" the Fourth Amendment. *Lewis*, 523 U.S. at 843. [2]

Defendants argue that removal of the gas mask was not a seizure and attempt to distinguish the circumstances from *Ciminillo v. Streicher*, 434 F.3d 461, 464–65 (6th Cir. 2006). (ECF No. 48 at 19). In *Ciminillo*, the plaintiff alleged he tried to leave the scene of the riot by approaching the defendant officer with hands raised in the air. 434 F.3d at 464–65. Plaintiff alleges the officer shot

---

[2] This Court previously examined whether officers seized protestors under the Fourth Amendment when officers used chemical agents, less-lethal projectiles such as wooden knockers, and physical force. *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 263 (S.D. Ohio 2021). This Court noted that the dispositive question is one of control: Did the police control Plaintiffs' and protestors' movement through the use of force intentionally applied? *Id*.

The case *sub judice* involves the use of chemical agents during one of the protests reviewed in *Alsada*. Treadway does not argue that the use of the chemical agents was excessive, nor does he argue that he was seized based on the use of the chemical agents. As such, this Court will address the removal of the gas mask and the arrest as the alleged seizures.

plaintiff with beanbag propellant as he was trying to leave, and officers told plaintiff to lie on the ground and later ordered plaintiff to report to another officer. *Id*. The Sixth Circuit noted that whether the officer shot plaintiff to restrain his movement was a disputed question of fact and analyzed plaintiff's excessive force claim under the Fourth Amendment because the court was required to take "facts in the record most favorable to the non-moving party as true" at summary judgment. *Id*. at 466.

Defendants argue Plaintiff's case is distinguishable and lacks the required seizure because Ramsey did not restrain Plaintiff's movement, tell Plaintiff that he was under arrest, or order Plaintiff to do anything. (ECF No. 48 at 19–20). Defendants insist that Plaintiff was "free to leave both before and after Ramsey lifted the gas mask" and emphasize that Plaintiff did not submit to Ramsey's action and, instead has a "violent reaction." (*Id*.).

*Ciminillo*, however, is more similar to the case *sub judice* than Defendants argue with respect to the analysis of whether an officer's conduct "objectively manifests intent to restrain." *See Torres*, 592 U.S. at 317. As in *Ciminillo*, there remains a question of whether Ramsey's conduct was "in an effort to restrain" Plaintiff's movement. Indeed, "[a] seizure does not depend on the subjective intent of the police officer or the subjective perception of the seized person." (ECF No. 54 at 7). This Court, still must assume the "facts supported by the record that are most favorable to [plaintiff] to be true," and must "draw[] all inferences [plaintiff's] favor . . . ." *Ciminillo*, 434 F.3d at 466. The facts and inferences here indicate that officers sprayed chemical agents towards Plaintiff during the protest. (ECF No. 41, Ex. E). Plaintiff raised his middle finger at the officers, and Ramsey subsequently approached Plaintiff from behind, grabbed Plaintiff by the shoulder, and removed Plaintiff's mask strapped to Plaintiff's head. (*Id*.). Plaintiff alleges these events occurred as he was attempting to comply with officer orders to leave the area where officers

17

were spraying chemical agents. (ECF No. 53 at 11). That Plaintiff had a "violent reaction to Ramsey" has no bearing on whether Ramsey objectively manifests an intent to restrain. (ECF No. 48 at 20). Force "with intent to restrain is a seizure, even if the force does not succeed in subduing the person." *Torres*, 592 U.S. at 325.

Further, Ramsey's conduct of removing the gas mask is not as simple as lifting up Plaintiff's gas mask but includes grabbing Plaintiff's shoulder from behind as Ramsey removed the gas mask strapped to Plaintiff's head. (ECF No. 48 at 19; ECF No. 53 at 10; ECF No. 41, Ex. E. at 4:08-4:11). Defendant's argument regarding Plaintiff's freedom of movement seems to be limited to before and after Ramsey lifted the gas mask. (ECF No. 48 at 19–20). What about while the gas mask was being lifted? This Court finds there is sufficient evidence favoring Plaintiff's assertion that the removal of the gas mask was a seizure.

Ramsey's conduct of grabbing Plaintiff's shoulder and removing the gas mask viewed in the light most favorable to Plaintiff, manifests an intent to restrain Plaintiff. A mere touch can be enough for a seizure and brief seizures are seizures all the same. *Torres*, 592 U.S. at 317–18. That said, a simple shoulder tap getting one's attention is rarely sufficient and "the amount of force remains pertinent in assessing the objective intent to restrain." *Id*. at 317. One case worth discussing is from the United States District Court, District of Columbia. *Jones v. D.C.*, No. CV 21-836 (RC), 2021 WL 5206207 (D.D.C. Nov. 9, 2021). In *Jones*, the defendant officer "abruptly positioned himself" in front of plaintiff while plaintiff was walking. *Id*. at *1. Plaintiff stopped before bumping into the officer and the officer suddenly took one hand and pushed plaintiff, causing plaintiff to step back and put his hands in the air. *Id*. After further interaction, the defendant officer "forcefully" pushed plaintiff again with both hands. *Id.* The court found that the officer's pushing did not suggest that he intended to stop plaintiff from turning around and walking or

18

running in the other direction, particularly when, "at least with respect to [the officer's] second push," plaintiff argued the officer had an intent "to bait [plaintiff] into a physical altercation." *Id*. at *4. The court noted an officer with an intent to incite "cannot simultaneously wish to restrain" as a restrained person "would lack the freedom of movement necessary to carry out the desired attack." *Id*. The court held that the allegations support an inference the officer intended to harm or provoke the plaintiff, but the pushing did not show the officer objectively manifested an intent to restrain the plaintiff. *Id*. at *5

Contrary to the officer in *Jones*, the evidence, viewed in the light most favorable to Plaintiff, shows an intent to restrain. Ramsey intentionally grabbed Plaintiff by the shoulder as Ramsey removed the mask strapped to Plaintiff's head. (ECF No. 53 at 10). This grab is more than the "tap on the shoulder to get one's attention" which would "rarely exhibit" an intent to restrain. *See Torres*, 592 U.S. at 317. Ramsey grabbed Plaintiff's shoulder while pulling up the mask with an intent at least to restrain Plaintiff long enough to remove the mask strapped to Plaintiff's head.

This Court's role is not "to weigh the evidence and determine the truth of the matter . . . ." *Anderson*, 477 U.S. at 249. Instead, this Court must determine whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. There is sufficient evidence favoring Plaintiff's assertion that the removal of the gas mask was a seizure. Even so, this is just the first step of this Court's Fourth Amendment claim analysis. The seizure must be unreasonable to violate the Fourth Amendment. *Torres*, 592 U.S. at 325.

*(2) Fourth Amendment: Whether Actions Were Objectively Reasonable*

Defendants argue that, if there was a seizure, Ramsey is entitled to summary judgment and qualified immunity because Ramsey's conduct was objectively reasonable and did not violate Plaintiff's clearly established Fourth Amendment rights. (ECF No. 48 at 23). In determining whether the use of force in effecting an arrest is excessive in violation of the Fourth Amendment,

19

the court must determine "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). When analyzing an excessive force claim, the court assess the use of force as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Graham*, 490 U.S. at 396). Overall, the court is to determine "whether the totality of the circumstances justifies a particular level of force." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 865 (6th Cir. 2020) (quoting *Coffey v. Carroll*, 933 F.3d 577, 588 (6th Cir. 2019)).

Said differently, the court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citations omitted). Courts may consider various factors, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight (the "*Graham* factors"). *Graham*, 490 U.S. at 396. The court may also consider the following: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; [and] any effort made by the officer to temper or to limit the amount of force." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

The severity of the crime at issue weighs in favor of finding the force was excessive. Defendants insist that Ramsey's conduct was to get Plaintiff to disperse from the protest. (ECF No. 48 at 24). Defendants argue Plaintiff was part of a crowd that took over High street multiple times and Plaintiff was in the area where individuals were throwing bottles and objects at CPD

20

officers. (*Id*.). CPD eventually deployed cannisters with chemical agents to disperse the crowd and Plaintiff was in an area where protestors were throwing cannisters back at the officers. (*Id*.). Defendants emphasize the police department had concerns of violence after the issues from the protests on the days before. (*Id*.). Plaintiff was also wearing a gas mask, preventing him from feeling the effects of the chemicals. Thus, when the cannister was deployed near Plaintiff, he did not leave. (*Id*.). Rather, he admitted tampering with a cannister to stop the chemical reaction meant to disperse the crowd. (*Id*.). When the officers approached Plaintiff and others on the sidewalk, spraying chemical agents and ordering them to disperse, Plaintiff flipped off the officers, turned away, and stepped northbound towards the only open direction. (*Id*. at 25). That is when Ramsey approached Plaintiff from behind, grabbed Plaintiff's shoulder, and pulled up Plaintiff's gas mask. (*Id*.). Defendants thus argue that Ramsey's use of minimal force was a reasonable way to gain compliance and to get Plaintiff to disperse. This, however, is a questionable argument considering, when viewing evidence in light favorable to Plaintiff, Plaintiff was dispersing as ordered.

Furthermore, whether the suspect posed an immediate threat to the safety of the officers or others weighs in favor of finding the force was excessive. When Ramsey removed Plaintiff's gas mask, Plaintiff was walking away from the officers, thus not threatening them and there are no arguments that Plaintiff threatened the safety of others. Similarly, whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight supports finding the force was excessive. Plaintiff argues that he was complying with orders to disperse when Ramsey grabbed his shoulder to remove the gas mask. Defendants counter Plaintiff's assertions and state that "his actions must be viewed objectively from the perspective of a reasonable officer at the scene." (ECF No. 48 at 26). The video, however, sufficiently supports Plaintiff's assertion: Plaintiff was turning away to disperse as ordered.

Because of the sufficient evidence to support that Plaintiff was complying with orders to disperse, this Court finds Ramsey's conduct of removing the mask was not objectively reasonable when viewing evidence in light favorable to Plaintiff.

### (3) Fourteenth Amendment

Generally, the Fourteenth Amendment's due process provision has a substantive component that guarantees "protection of the individual against arbitrary action of government." Jones v. Byrnes, 585 F.3d 971, 976 (6th Cir. 2009) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)). This includes "the right not to be subjected to arbitrary and capricious government action that 'shocks the conscience and violates the decencies of civilized conduct.'" *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Lewis*, 523 U.S. at 846–47).

The Supreme Court explained that whether governmental conduct shocks the conscience depends on the factual circumstances of the case. *Lewis*, 523 U.S. at 851–53. When the government actors:

> are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . . their actions will be deemed conscience-shocking if they were taken with "deliberate indifference" towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . . public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."

*Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S. at 852–53). Defendants argue the conditions were "rapidly evolving, fluid, and dangerous circumstances" so the "conduct shocks the conscience only if the force was applied 'maliciously and sadistically for the very purpose of causing harm.'" (ECF No 48 at 21-22).

Plaintiff proposes that "when determining whether Ramsey's conduct 'shocks the conscience,' the test is not the degree of harm caused, but whether he deliberately intended to injure Plaintiff, and do so in some way which was unjustified by any government interest." (ECF No. 53 at 13). Indeed,

"conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. A police officer's actions may shock the conscience when it involves "a purpose to cause harm unrelated to the legitimate object of arrest." *Lombardo v. Ernst*, 597 F. App'x 813, 815–16 (6th Cir. 2014) (quoting *Lewis*, 523 U.S. at 836). This includes actions that "are motivated by an 'intent to harm suspects physically or to worsen their legal plight' in a manner unrelated to the legitimate object of arrest." *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009) (quoting *Lewis*, 523 U.S. at 836, 854).

Defendants rely on a Sixth Circuit case where an officer who struck a plaintiff in the face was granted summary judgment after applying the "shock the conscience" test. *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001). In *Darrah*, plaintiff brought an excessive force claim against an officer who struck her in the face during a protest. *Id*. at 304–05. The officer was attempting to subdue another protestor when plaintiff interfered, grabbed the officer's ankle, and told the officer to stop. *Id*. The officer then "turned and swung backwards" striking the plaintiff in the face. *Id.* The court noted that the officer was grabbed from behind "in a loud and unruly crowd of people" and thus he "did not have time to deliberate the best possible course of action." *Id*. at 307. The court found that "the plaintiff simply cannot show that any reasonable jury could find that [the officer's] conduct was malicious, sadistic, and imposed not to restore order, but only to cause harm." *Darrah*, 255 F.3d at 307.

Defendants make an argument parallel to the finding in *Darrah*. Defendants explain that Ramsey was responding to a "rapidly evolving, fluid, and dangerous predicament." (ECF No. 48 at 21). Defendants describe the crowd as "large and unruly" and state that people near Plaintiff were "throwing bottles and objects at police, kicking and throwing canisters at police, and [Plaintiff] was tampering with a canister deployed by police. (*Id*.). Defendants conclude that Ramsey had a legitimate interest in applying minimal force to get Plaintiff to disperse and "there is no evidence that Ramsey acted maliciously or sadistically, for the very purpose of causing harm to Treadway." (ECF No. 48 at 22).

23

The case *sub judice*, however, has an important distinction: the video illustrates sufficient evidence that Ramsey was motivated by Plaintiff's First Amendment activity rather than any legitimate interest. Again, Defendants request that this Court accept the argument that Ramsey removed Plaintiff's gas mask so Plaintiff could be exposed to the gas and would disperse. (ECF No. 48 at 21). Defendants explain that "[g]iven the violence and property destruction that occurred during the protests on May 28 and May 29, CPD's concerns about the escalating violence on May 30 was reasonable." (ECF No. 48 at 22). Police officers ordered protestors to disperse, and Plaintiff admits tampering with a canister that CPD had deployed to disperse the crowd. (*Id*.).

While perhaps the mask was removed to expose Plaintiff to chemical agents so he can disperse and follow police orders, there is an issue for trial when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (1986). Here, important video evidence to consider is: (1) Plaintiff raised his middle finger at the officers, including Ramsey, after officers began spraying chemical agents directly at Plaintiff and ordering Plaintiff to disperse; and (2) Plaintiff turned around and appears to begin to follow the officers' orders to disperse, along with other protestors. Thus, any argument that the gas mask was removed to expose Plaintiff to chemical agents is unconvincing.

This sufficient evidence, viewed in light favorable to the nonmovant, shows Ramsey's conduct could have been reactive to Plaintiff's First Amendment exercise and "intended to harm" or "to worsen [Plaintiff's] legal plight" in a way that is "unjustifiable by any government interest" or "in a manner unrelated to the legitimate object of arrest." *Lewis*, 523 U.S. at 849. Plaintiff, thus, can "show that [a] reasonable jury could find that [the officer's] conduct was malicious, sadistic, and imposed not to restore order, but only to cause harm." *Darrah*, 255 F.3d at 307. Plaintiff's Fourteenth Amendment claim related to the removal of his gas mask, therefore, must survive summary judgment.

### 3. *Whether the right was clearly established*

Defendants argue that, even if there were a constitutional right that were violated, the right was not clearly established. (ECF No. 48 at 26). The next step of the qualified immunity analysis asks us to determine whether the law was clearly established at the time of the violation. Especially in the excessive force context, where the scope of the right is highly fact-dependent, the Supreme Court has stressed the importance of identifying controlling precedent where the factual circumstances are specific enough to "'give fair and clear warning' to officers" that particular conduct violates the law. *Kisela v. Hughes*, 584 U.S. 100, 105 (2018).

In fact, the Sixth Circuit asserted "[a] suspect has a clearly established constitutional right to be free from the use of physical force by police officers when he is not resisting efforts to apprehend him." *Coffey v. Carroll*, 933 F.3d 577, 589 (6th Cir. 2019). Any officer would have known it violated a constitutional right to use force against a person complying with orders. Ramsey is therefore not entitled to qualified immunity on the excessive force claim and the Motion is **DENIED** with respect to his conduct of removing Plaintiff's gas mask.

Defendants also seeks summary judgment on the claim that the force used during the arrest, after Ramsey removed the mask, was excessive. Plaintiff claims that Ramsey assaulted Plaintiff and provides the following laws:

> R.C. 2903.13(A): No person shall knowingly cause or attempt to cause physical harm to another."
> R.C. 2901.01: "Physical harm to persons means any injury…regardless of its gravity or duration."

Plaintiff also explains that, under Ohio law, all individuals have a right to utilize force in self-defense. R.C. 2901.05(B)(1).

Again, this Court must ask "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent

or motivation." *Graham*, 490 U.S. at 397. The *Graham* factors weigh in favor of granting summary judgment for Defendants. After Ramsey grabbed Plaintiff and removed Plaintiff's mask, Plaintiff "immediately turned around, swung the small plastic bucket in his hand . . . and attempted to push [Ramsey] away." (ECF No. 53 at 5). The crime at issue then becomes assaulting an officer, and Plaintiff's continued actions, posed an immediate threat to officers.

As such, summary judgment is **GRANTED** with respect to the Fourth Amendment excessive force claims arising from Ramsey effectuating an arrest.

### D.  False Arrest

#### 1.  *Whether There Was A Constitutional Violation*

In order to succeed on a false arrest claim under § 1983, a plaintiff must prove that the arresting officer lacked probable cause for the complained of arrest. *Voyticky v. Village of Timberlake*, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). In considering whether there was probable cause for a plaintiff's prosecution, courts "consider the totality of the circumstances and whether the facts and circumstances of which [the officer] had knowledge at the moment of the arrest were sufficient to warrant a prudent person in believing that the seized individual had committed an offense." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) (cleaned up). The existence of probable cause in a § 1983 action is usually an inquiry for the jury, unless there is only one reasonable determination possible. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Plaintiff cannot prove that Ramsey lacked probable cause. Plaintiff was arrested for assaulting Ramsey, a CPD officer. (ECF No. 48 at 29). Ohio Revised Code § 2903.13(A) provides that "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." If the victim of an assault is a peace officer, then the assault is a felony of the fourth degree. 2903.13(C)(5). Plaintiff does not dispute, and video evidence shows, Plaintiff

26

"immediately turned around, swung the small plastic bucket in his hand (which appears to have hit Ramsey's elbow guard), and attempted to push [Ramsey] away." (ECF No. 53 at 5).

Plaintiff maintains that his false arrest claim survives summary judgment because Ramsey "would have known that Plaintiff's use of force was justified self-defense" and explains that "to the extent that the record in this case supports a finding that Ramsey engaged in his criminal and unconstitutional conduct for the purpose of provoking Plaintiff into acting in self-defense, Plaintiff's claim again survives summary judgment." (ECF No. 53 at 15). This argument fails. As explained above in denying Plaintiff's excessive force claims as it relates to effectuating the arrest, Plaintiff stated that "as soon as I was turned around, my arms were already swinging. It was just instinctual. . . . I stopped, recognized that he was an officer, and then proceeded – it was just a quick reaction."

Ramsey is thus entitled to qualified immunity with respect to the false arrest claim and Defendants' Motion is **GRANTED**.

## IV.    CONCLUSION

For the reasons stated above. Defendants' Motion for Summary Judgment (ECF No. 48) is **GRANTED in part and DENIED in part.** The Motion is **GRANTED** as to all claims against Defendants City of Columbus, James Long, and Unknown Officers; the state law claim for intentional infliction of emotional distress; and the False Arrest Claim. The Motion is **DENIED** as to the First Amendment Claims and the excessive force claims under the Fourth and Fourteenth Amendment regarding the act of removing the gas mask, but the Motion is  **GRANTED** with regard to the arrest. A trial order will issue under separate cover.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT JUDGE**

**DATED:  March 4, 2025**

27